BANK OF POPLAR BLUFF,
Plaintiff-Respondent,

v.

Harold and Barbara CORBIN,
Defendants-Appellants.

No. 11419.

Missouri Court of Appeals,
Southern District,
En Banc.

Feb. 20, 1980.

Fred J. Gerhard, Southwest Missouri Legal Services, Inc., Sikeston, for defendants-appellants.

GREENE, Judge.

This is an appeal from a deficiency judgment entered against defendants in the Circuit Court of Butler County. On October 19, 1977, defendants Harold and Barbara Corbin borrowed $1,694.64 from plaintiff bank and executed a promissory note made payable to the bank in that amount. The note was secured by a 1970 Kenzie Craft boat and a 1973 Mercury outboard motor, via a standard written security agreement. Defendants made some payments on the note, but eventually defaulted. Plaintiff filed suit on the note and obtained possession of the boat and motor through a Writ of Attachment. No service was obtained on defendant Harold Corbin. Plaintiff then sought and received a repossession title to the boat and motor from the State Department of Revenue. Plaintiff then posted "sell notices" at the county courthouse and the city hall, and mailed a copy of the notice of sale to defendant Barbara Corbin. By this time, defendant Harold Corbin had died. It does not appear that any action was ever taken to proceed properly against Harold Corbin.

The public sale was held on March 23, 1979. On that day, Mr. Stucker and Mr. Williams, both employees of plaintiff, appeared at the courthouse, which was the announced site of the sale. No one else appeared. Stucker "made the sale" to plaintiff bank represented by Mr. Williams for bidding purposes, for the sum of $500. At trial, both testified that $500 was a fair price for the items in question. No entries were made on the note, or on any other document, at that time, to credit defendant's account with the proceeds of the sale.

On April 25, 1979, a firm known as "The Boat Place" purchased the boat and motor from plaintiff for $800. At trial, Stucker testified such sum was "more than a fair price." Williams then made the notation of credit on the back of the note in the amount of $800. No notice was given to Mrs. Corbin of the proposed sale to "The Boat Place." Plaintiff then sought and received a deficiency judgment against defendants in the amount owed it on the note, after all credits, including the $800 paid by "The Boat Place", had been given which deficiency amounted to $470.98, plus $120 attorney fees and accrued interest.

■ The judgment, of course, is void against defendant Harold Corbin. There is no showing that personal service was ever obtained upon him, and no showing that the action was ever in a posture to proceed against his proper representative, whether by original service or by substitution of parties after plaintiff learned of his death.

■ Defendant Barbara Corbin concedes the propriety and sufficiency of notice to her of the proposed public sale of March 23, 1979. She contends, however, that § 400.9–504(3), RSMO 1978, V.A.M.S. required notice to her of the later private sale disposition of the boat and motor and that, since no such notice was given, plaintiff has forfeited its right to a deficiency judgment, citing *Gateway Aviation, Inc. v. Cessna Aircraft Co.*, 577 S.W.2d 860 (Mo.App.1978) as authority for her position. In *Gateway,* an airplane was repossessed after default in note payments. The plane was advertised for public sale. Notice was given to the defaulting party. All bids made at the public offering were refused. The security holder then sold the plane at private sale without notice. The appellate court held that failure to give notice to the defaulting party of the impending private sale waived

the right of the security holder to a deficiency judgment. The court pointed out that deficiency judgments, after repossession of collateral, are in derogation of common law and that any right to a deficiency judgment after repossession accrued only after strict compliance with the relevant statutes. 577 S.W.2d at 863[5].

It is, therefore, necessary to examine the relevant statutes. Section 400.9–504(1) gives a secured party the right, after default, to sell, or otherwise dispose of the collateral, and provides the method of application of the proceeds of such sale, including satisfaction of the indebtedness secured by the security interest under which the disposition is made. Subsection 2 of this section provides that the debtor is liable for any deficiency after such a sale. Subsection 3 provides that disposition of the collateral may be by public or private proceedings. It further provides that the sale or other disposition must be commercially reasonable and goes on to state that reasonable notification of the proposed sale shall be given to the debtor. It further provides that the secured party may buy at any public sale and, if the collateral is of a type customarily sold in a recognized market or is of a type which is the subject of widely distributed standard price quotations, may buy at private sale. Viewed in the light of these applicable statutes, we feel that plaintiff complied with the law.

Defendant Barbara Corbin raises an extremely limited challenge to the sale of collateral to plaintiff bank on March 23, 1979. She is not questioning the adequacy of the price for which the boat and motor were sold to the bank at the public sale. Defendant is not contending that the time, place or manner of offering the collateral for public sale was commercially unreasonable. She is not alleging that such sale is invalid because the secured party was the sole bidder, nor is she claiming that she was prohibited or discouraged from taking any steps at the public sale to protect her interest in the collateral or minimize her obligation. Her only argument, in connection with the public sale, is that the lack of an overt act by the bank, on March 23, 1979,

showing credit to her in the amount of $500, the stated proceeds of the public sale, prevents the transaction from being a sale at all. This argument is not supported by any pertinent legal authority in her brief, and independent research has disclosed none.

It is clearly inferable from the rather sparse record that an offer and acceptance were made between the only parties attending the advertised public sale at issue here and that a sale was consummated at that time. Such sale cut off the debtor's redemption rights. § 400.9–506. The only remaining duty for the security holder was to make an accounting to debtor of the proceeds of the sale. That has been done in this case, even though such accounting was delayed for 33 days. It should be emphasized that the disposition of collateral, by sale or otherwise, and the subsequent duty to account are two different activities under the statutory sections cited. In any event, an accounting was made and credit given, gratuitously it seems, for not only the $500 public sale price, but for an additional $300 obtained at the subsequent private sale. The second sale to "The Boat Place" did not harm Barbara Corbin financially. It helped her.

Since there is no showing in the record of a lack of commercial reasonableness in any aspect of the public sale of the collateral to plaintiff on March 23, 1979, plaintiff, after such sale, stood in the position of any other purchaser for value and had no other duty to the debtor except to make accounting, which it later did. The point is denied.

The judgment is reversed against defendant Harold Corbin and affirmed against defendant Barbara Corbin.

All concur.