Bertram Harnett, J.
Can a high school student who has satisfactorily completed her studies, and is not a threat to the orderliness of her class graduation ceremony, be punished for separate school misconduct by being barred from that ceremony?
Anna Ladson, 18 years old and black, was completing her senior year at Freeport High School. On March 8, 1971, the school was evacuated for a bomb threat, and stonings between white and black students were charged to have occurred. In the midst of this, Miss Ladson was said to have struck and threatened William McElroy, the high school Principal.
As a result, Miss Ladson was notified by respondent, Acting Superintendent of Schools Costlow, on March 11, 1971, that she *174 was suspended from attendance at classes pursuant to section 3214 of the Education Law, until the determination of a suspen- • sion hearing scheduled for March 16,1971. The suspension hearing was ultimately held on March 18, 1971 before Mr. Costlow. Miss Ladson was represented by counsel.
On April 5, 1971, the Acting Superintendent of Schools found her guilty on both specifications of the charge, and (1) suspended her from class for 22 school days, beginning March 8, 1971; (2) placed her on home-tutoring for the balance of the school year; and (3) directed that she was to receive her graduation diploma in the Principal’s office on “Monday, June 29, 1971 ” [sic] rather than at the regular graduation ceremony on Sunday, June 27, 1971.
Miss Ladson, appearing by her mother, instituted this proceeding by order to show cause returnable June 22, 1971, essentially to annul that portion of the determination by the Acting Superintendent which prevented Anna Ladson from attending her graduation ceremony.
In the brief period between service of the order to show cause and the June 22,1971 return date for this proceeding, the school board was unable to prepare appropriate papers in opposition. In view of the imminent approach of graduation day, the court proceeded with argument upon the student’s papers, since the school board did not dispute the factual averments of her petition, and both parties were on notice of the full legal involvement.
On June 22, 1971, the school board argued that Miss Ladson was barred from invoking the jurisdiction of this court by her failure to exhaust her administrative remedy of appeal to the Board of Education during the 2% months since the determination of the Acting Superintendent. In hearing the motion on June 22, 1971, the court was impressed with the gravity of the matter and the policy considerations implicit in it. There was involved on the one hand, the personal interest of Miss Ladson and her family, particularly to attend and participate in the graduation ceremonies which constituted a significant educational landmark to them. On the other hand, there was the public interest in orderly administration and discipline in the public schools. For that reason, the court orally directed a special meeting of the Board of Education so that Miss Ladson’s administrative appeal might be heard and determined before the scheduled graduation date. A short-form order was entered accordingly.
*175 To its credit, the Board of Education assembled with dispatch. The appeal was heard on June 24, 1971, affording Miss Ladson the complete administrative, procedure. On June 25, 1971, she was notified that the board had confirmed the determination of the Acting Superintendent in all respects. At the request of petitioner’s counsel, the court then reconvened this matter that afternoon, two days before the scheduled ceremonies, in order to hold a hearing upon the facts and to consider the merits of the legal arguments. (See Matter of Olson v. Wanich, 40 Misc 2d 246.)
Subdivision 6 of section 3214 of the Education Law provides that: “a * * * the superintendent of schools * * * may suspend the following minors from required attendance upon instruction: (1) A minor who is insubordinate or disorderly, or whose conduct otherwise endangers the safety, morals, health or welfare of others ”. Petitioner asserts that respondent Costlow, who is Acting Superintendent of Schools, and not Superintendent of Schools, was without statutory power to effectuate a suspension, and was similarly without power to preside at the March 18, 1971 disciplinary hearing since section 3214 (subd. 6, par. c) of the Education Law provides that the hearing be “ held before the superintendent of schools ”. The court finds this argument to be without merit. The Freeport School District currently has a vacancy in the office of Superintendent of Schools, and the Board of Education has delegated the duties of that office to respondent Costlow as Acting Superintendent until such time as the vacancy is filled. Where an Acting Superintendent is properly appointed, he holds all the functions and powers of a Superintendent. (Matter of De Lorme, 76 N. Y. St. Dept. Rep. 119.) Accordingly, Mr. Costlow properly exercised the power of a Superintendent of Schools pursuant to section 3214 of the Education Law.
Petitioner further argues that the procedure established by the Education Law is violative of due process because the hearing officer is the enforcement officer, or to state it another way, the officer who imposed the initial penalty is the officer who conducts the subsequent hearing. However, it was the Principal not the Superintendent who was personally involved in the incident. The statutory procedure authorizes a Superintendent of Schools to suspend a minor pupil without a hearing for a period not to exceed five days. (Cf. Curry v. Board of Educ., 60 Misc 2d 651.) A suspension in excess of five days may be imposed by a superintendent only after a full hearing before him. (Education Law, § 3214, subd. 6, par. c.) That hearing *176 does not constitute review by the Superintendent of his own prior determination to suspend for no more than five days, but rather is a hearing of the merits of the controversy, ending in a de novo determination whether a more than five-day suspension should be imposed. Upon that determination, the process continues and an appeal lies to the Board of Education as the final impartial administrative arbiter. Where these statutory procedures are followed, there is no denial of due process. (See Schwartz v. Schuker, 298 F. Supp. 238.) WTiile the holding might well be otherwise were the Superintendent also the complainant, that is not the case here where the complainant is the Principal who was allegedly struck.
The real issue of the case is the power and appropriateness of punishment. Under the circumstances, the court rules that Miss Ladson should be permitted to attend the graduation ceremonies and receive her diploma together with her classmates. Although vested with wide disciplinary powers over students, the public school authorities do not have the powers to bar a public school student from graduation ceremonies under the circumstances of this case.
The school authorities have express power to establish reasonable rules and regulations: ‘ ‘ concerning the order and discipline of the schools * * * as they may deem necessary to secure the best educational results ”. (Education Law, § 1709, subd. 2; Matter of Scott v. Board of Educ., 61 Misc 2d 333.) However, the only pertinent express statutory punitive power of a Board of Education is limited in the case of minors to suspension “ from required attendance upon instruction”. (Education Law, § 3214, subd. 6.) It is conceded that attendance at graduation ceremonies is optional for all students at Freeport High School. Clearly then, the presence of students at the ceremonies is not “ required attendance ”. Neither is it for the purposes of instruction, since all pertinent course requirements have been completed by those who are to receive diplomas. Rather, it is a ceremony at which the school authorities, and the families and friends of graduates, honor the educational achievement of those who receive their diplomas. Nowhere in the statutory scheme of public school administration does there appear express authority to direct suspension from participation in those ceremonies as a disciplinary measure directed at students otherwise qualified to participate. (See Howard v. Clark, 59 Misc 2d 327.)
Respondents submit that the school officials have inherent power to discipline by excluding persons from graduation ceremonies. This would obviously be so if a threat to disruption of *177 the ceremony were presented. If there were sufficient good reason to suppose that the presence at the ceremony of a particular student would cause an upset or disruption of the ceremony, exclusion might be an appropriate regulatory act by the Board of Education. However, the testimony in the case of both the Principal and Miss Ladson explicitly negated such apprehension.
Inherent powers do not exist in the air. They must relate to standards of reasonable relationship. For instance, students cannot be physically attacked, degraded, unduly humiliated, nor vindictively treated. The best test must come from the statutory linkage of discipline to “ best educational results ”. (Education Law, § 1709, subd. 2.)
Students, black and white, proclaim that it is not easy to be a student today. Neither is it easy to be a school board member today, or a Superintendent, or a Principal, in Freeport, or for that matter, elsewhere. We live in difficult times and so we have difficult problems.
The court is persuaded that punishment and discipline should be responsive to the educational goals to which the school system is dedicated. Courts are dedicated not only to the administration of laws, but to the pursuit of justice, and the two ideals must come together. The justice of the situation favors graduation attendance. We have here a student of demonstrated dedication, who has persevered through all of her term in high school and has completed her final year under adversity, even though some of that adversity may be of her own doing. She has been accepted at college. Her graduation ceremony is important and meaningful to her personally and in her family which has never before had a high school graduate. She has no other record of school disorder than the one incident here involved. It would indeed be a distortion of our educational process in this period of youthful discontentment to snatch from a young woman at the point of educational fruition the savoring of her educational success. The court believes that not to be a reasonable punishment meant to encourage the best educational results.
If an error is being made, the court must err on the side of the youngster seeking to make her way and to fortify her to continue with her education.