STATE of Missouri ex rel. Bessie Elaine MILLER, a minor, by next friend Donald E. Miller, Plaintiff-Appellant,

v.

James M. McLEOD, John W. Webb, Robert Dunn, William Gladden, Billy C. Sponsler, a/k/a William Sponsler, Linville Hardin, Glenn Arthur, Alice Crawford and Houston Reorganized School District No. 1 of Texas County, Defendants-Respondents.

Nos. 11317, 11323.

Missouri Court of Appeals, Southern District, Division One.

July 29, 1980.

Motion for Rehearing or to Transfer to Supreme Court Denied Aug. 20, 1980.

Application to Transfer Denied Oct. 15, 1980.

---

Ronald J. Fuller, Rolla, for plaintiff-appellant.

Glenn A. Burkart, Mann, Walter, Burkart, Weathers & Walter, Springfield, for defendants-respondents.

GREENE, Judge.

Plaintiff Bessie Miller, a minor, through her father and next friend Donald Miller, brought this action for a mandatory injunction (Count I), declaratory judgment (Count II) and a writ of mandamus (Count III). There are eight defendants: The principal of Houston Senior High School, the superintendent of schools for the school district, and six members of the broad of education of Houston Reorganized School District No. 1 of Texas County.

Bessie entered Houston High School in the fall of 1974 as a freshman. She quit school in the spring of 1978 during the second semester of her senior year. The dispute arose out of the refusal of the defendants to issue her a diploma. The refusal was on the ground that she had failed to meet the "high school graduation requirements" contained in the rules of the school district.

The trial court dismissed Count I on the ground it was moot and neither side challenges that ruling. In Count II, Bessie sought a declaratory judgment to the effect that the rules "requiring attendance at high school for a period longer than is required to successfully complete the number of units of credit which constitute and satisfy the minimum measure of academic achievement required for graduation are unconstitutional and in derogation of the due process and equal protection rights of [Bessie] and serve no reasonable educational pur-

pose." In Count III, Bessie sought a writ of mandamus commanding the defendants to issue her a diploma. After hearing, the trial court filed extensive findings of fact, conclusions of law, and a judgment, which are set out in the Appendix to this opinion. Finding of Fact II listed the graduation requirements, which included the right to graduate after seven semesters, if the student had completed 22 units of credit, three of which could be earned through on-the-job training.

The trial court found the issues in Count II in favor of defendants and declared that the rules containing the graduation requirements were not inherently discriminatory, unreasonable or arbitrary and were not unconstitutional. The court found the issues in Count III in favor of Bessie and entered its order directing the defendants to issue or cause to be issued and delivered to Bessie a diploma bearing her name in the same form as all other diplomas issued by defendants to those graduating from Houston High School on May 25, 1978.

Bessie appeals from the judgment on Count II and defendants appeal from the judgment on Count III. We affirm the trial court's judgment on Count III and dismiss Bessie's appeal on Count II.

■ A graduation rule, although inherently reasonable, may not be applied unreasonably, capriciously, arbitrarily, or inequitably to deny a diploma to a qualified candidate for graduation and that when such is done, mandamus is the proper remedy. *State ex rel. Sageser v. Ledbetter*, 559 S.W.2d 230, 234 (Mo.App.1977). In its findings and conclusions, the trial court found that defendants acted unreasonably, arbitrarily and capriciously in denying Bessie a diploma (conclusion No. 11), and, in its judgment on Count III, ordered defendants to give Bessie a diploma. Since this was a court-tried case, the judgment of the trial court should be sustained if it is supported by substantial evidence, is not against the weight of the evidence, and does not erroneously declare or apply the law. Appellate courts should exercise the power to set aside a judgment on the ground that it is

"against the weight of the evidence" with caution and with a firm belief that the decree or judgment was wrong. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). Where, as here, the question is whether the judgment is supported by substantial evidence, the reviewing court is required to accept as true all evidence favorable to the prevailing party and all reasonable inferences to be drawn therefrom, and is to disregard all contradictory testimony. *Ayers Plastics Co., Inc. v. Packaging Products Corp.*, 597 S.W.2d 177, 179 (Mo.App.1979). Our review is based on that premise.

■ In its conclusions of law, the trial court found that the function and goal of the state high school system was to meet student needs, individualize instruction, and humanize education (conclusion No. 8). It found that respondents owed Bessie and her parents a duty to assist Bessie and her family in approving a course of action that would fulfill her needs and, at the same time, meet the goals, function and purpose of the state school system (conclusion No. 10). It found that respondents acted unreasonably, arbitrarily, and capriciously in denying Bessie her diploma (conclusion No. 11). Bessie was taking Industrial Sewing in her 8th semester in school and actually completed all but 27 days of that semester (conclusions 11 and 12). She had 21½ credits (Finding of Fact V). Her job at the shoe factory was industrial sewing. She testified at the hearing that no school official ever told her that she could receive on-the-job training credit for her sewing work at the shoe factory. Her father testified that he had made a request of the School Board that they give a "waiver for our daughter so that she could both work and graduate." Such a plea for help from Bessie's farmer-father leaves a reasonable inference that if Bessie had been told that her work at the shoe factory constituted on-the-job training for which she would receive enough additional credit to complete her graduation requirements, such an offer of assistance would have been accepted.

The school authorities had given Bessie a work permit. They knew she was doing

industrial sewing at the shoe factory. They should have approved her work as on-the-job training but did not. In addition, the record indicates that respondent had graduated students with as few as 20 credits (Bessie had 21½) or who had not completed the 7th semester (Bessie had completed the 7th semester and most of the 8th). Defendants were arbitrary, unreasonable and capricious in denying Bessie a diploma, under the facts of this case.

A full review of the record indicates that the judgment of the trial court on Count III, in which it ordered respondents to issue a diploma to Bessie, is supported by substantial evidence, is not against the weight of the evidence, and does not contain any erroneous declaration or application of law. Defendant's appeal on Count III has no merit.

In regard to Bessie's appeal of the trial court's judgment on Count II (the declaratory judgment issue), her single point relied on is that the trial court erred "in finding and declaring that the rules and regulations of the Houston Reorganized District No. 1 of Texas County, Missouri, relative to graduation requirements, are not inherently discriminatory, unreasonable and arbitrary in themselves, as they apply to all students in the Houston High School, and are not unconstitutional and in derogation of the due process and equal protection rights of all students," listing 19 reasons why this is supposedly so. The point commences on page 13 of Bessie's reprinted brief, continues through all of pages 14 through 17, and finally ends about halfway through page 18. The verbose, rambling nature of the point as written, defies summarization. As such, it is grossly violative of the requirement of Rule 84.04(d)[1] that points relied on be both brief and concise. *Simpson v. Island View Sales Corp.*, 540 S.W.2d 624, 625 (Mo.App. 1976). Dismissal of Bessie's appeal would be justified on that ground alone under Rule 84.08.

In addition, there are other reasons mandating dismissal of her appeal. The Declaratory Judgment Act is not to be used and applied where an adequate remedy to right a claimed wrong exists. *Harris v. State Bank and Trust Company of Wellston*, 484 S.W.2d 177, 178–179 (Mo.1972). Bessie is not an aggrieved party in the statutory sense. § 512.020, RSMo 1969, V.A.M.S. The word "aggrieved" is defined as suffering from an infringement or denial of legal rights. *Farrell v. DeClue*, 382 S.W.2d 462, 466 (Mo.App.1964). Bessie's legal rights have not been denied or infringed upon, as the trial court ordered defendants to give her a diploma, which order granted her the only legal right that she claims defendants violated. Any lengthy dissertation on the whys and wherefores of declaratory judgments and the constitutionality of the graduation rules in question would only amount to empty echoes in the legal cave of the winds, in the form of an advisory opinion, a practice too often indulged in by our appellate courts.

The trial court's judgment on Count III is affirmed. Bessie's appeal on Count II is dismissed.

All concur except FLANIGAN, J., dissents and files dissenting opinion.

## APPENDIX
### *"COURT'S FINDING OF FACTS, CONCLUSIONS OF LAW AND ORDER*

This cause was heard by the Court on Wednesday, October 18, 1978, and taken under advisement. Counsel for plaintiff (relator) and counsel for defendants (respondents) have filed their suggestions as to Finding of Fact and Conclusions of Law. The court having heard and considered all the evidence and the suggestions and arguments of counsel, and being fully advised in the premises, now this 13th day of February, 1979 makes the following findings of fact and conclusions of law and enters it's (sic) order herein.

### *"FINDING OF FACTS*

I. At a meeting of the Board of Education of the Houston Reorganized School

---

1. Unless otherwise indicated, all references to rules are to Missouri Rules of Court, V.A.M.R.

District No. 1 of Texas County, Missouri held on July 13, 1973, the Houston High School graduation requirements were adopted by said Board of Education and are evidenced herein by Plaintiff's Exhibit No. P–1 and Exhibit No. P–5.

II. The graduation requirements from 1973 to time petition herein was filed were:

1. Student must complete at least 20 units of high school credit in grades nine through twelve, with specific requirements in certain subjects.

2. All students required to attend eight semesters in grades nine and above.

3. All students must be enrolled in at least 2½ units of credit each semester.

4. Permission may be granted (a student) to graduate after seven semesters under the following conditions:

    A. Student unable to attend school because of health problems.

    B. Student has completed 22 units.

    C. Student may substitute 3 units of credit earned in the following ways for one semester of attendance:

        a. summer school;

        b. night school;

        c. achievement credit;

        d. approved extension or correspondence courses by an accredited public institution of higher learning;

        e. attend college or university, vocational school or on-the-job training programs for the 8th semester (college, university, vocational school or on-the-job training programs must be approved in advance by public school officials).

III. The Plaintiff Relator is the youngest of four children of Mr. and Mrs. Donald E. Miller who reside on a farm near Cabool, Missouri within the Houston Reorganized School District No. 1, one of the respondents herein.

IV. Relator became 18 years of age on May 31, 1978. She was enrolled as a student at Houston High School during her 9th, 10th, 11th and 12th years of school except for the last five weeks of the 12th year or 8th semester.

V. When relator enrolled for the 8th semester, she had earned and received 21 academic credits or units toward her graduation—on March 21, 1978, and while relator was still a student enrolled in the Houston High School, the Principal of the high school, advised her that relator's academic records had been 'updated' and that she (relator) had on that date 21½ units toward her graduation.

VI. Before enrolling for the 8th semester, relator had expressed to her parents a desire to quit school and to accept a job at the factory in Cabool where her mother was employed; she was persuaded to remain in school and then her father began to seek some assistance in the matter of some arrangement whereby the relator could accept the factory job and also obtain her high school diploma without having to attend the full 8th semester.

VII. Relator enrolled for the 8th semester and was taking a course of study that upon completion would have yielded her 3 units of credit. One course which she was taking was 'Industrial Sewing' which carried a unit value of 1.

VIII. Relator's father appeared before the Board of Education on at least 2 occasions, after being refused to appear before the board on the first request, seeking assistance.

IX. On March 31, relator was granted a 'work permit' by the superintendent's office of the Houston High School. From the beginning of the 8th semester to March 31, relator had attended school regularly. On April 17, without any notice to relator, she was 'dropped' as a student by the principal. Graduation was held on May 25, 1978 and relator was in attendance.

X. One student who received a diploma in May, 1978, although he was supposed to have had 22 credits at the end of the seventh semester, was required to attend 4 class periods out of 7 periods during the 8th semester. He was not enrolled in any subjects and was not required to earn any credit.

XI. One student received her diploma without attending the 8th semester or having completed the 7th semester. She had been excused by the principal for 'health reasons'.

XII. Relator was aware of the graduation requirements; they were 'explained' to her at the end of her 6th semester.

XIII. The Rules (Plaintiff's exhibits 1 and 5) do not define terms or give any guidelines or criteria for their enforcement or application. There is no evidence that any exist.

XIV. Respondent, School District, sustains a substantial loss in state aid when students are permitted to graduate in less than 8 full semesters.

XV. It is the policy of the State of Missouri as expressed by the State Department of Education (Exhibit D-B) that 'to meet high school graduation requirements a student must complete a minimum of 20 units of credit during grades 9 and above *in a program which should be cooperatively planned by the student, his parents and the school to meet individual needs of the student.* (emphasis ours).

## "CONCLUSIONS OF LAW

1. The Houston Reorganized School District No. 1 of Texas County Board of Education, respondent herein, is a legal entity, created by statute and has the authority, by and through its officers, to make rules and regulations necessary for the administration of the affairs pertaining to the operation of the public schools within its district.

2. Individual respondents herein are the duly elected members of the Board of Education of the said Houston School District.

3. Authority of the said Board of Education to make all needful rules and regulations for the organization grading and government of the schools in its district is statutory (VAMS 171.011).

4. The rules of the respondent school district set forth in plaintiff's exhibit No. P-1 are needful rules and regulations, and are intended to serve and promote the best interest of the function of the school and of its students.

5. Respondent school district and its Board of Education is a public administrative body and as such its rules have the force and effect of law; therefore its rules and regulations must be definite and certain. Such rules and regulations should not be subject to the objection that they fail to lay down adequate legislative standards, since they must contain a guide or standard applicably alike to all individuals similarly situated, so that anyone interested may be able to determine his own rights or exemptions thereunder.

6. Courts do not have any jurisdiction to make rules and regulations for school districts or their Board of Education. Courts can only interfere when the Board acts in an unreasonable, arbitrary, capricious or unlawful manner, or where a consideration of the aspect of guidelines and due process are involved.

7. A high school diploma is a thing of considerable importance. As stated in defendant's exhibits D-B  *  *  *  'it offers the key to obtaining employment, advancing in position, etc.  *  *  *  the general public is convinced that a young person must have a high school diploma to become an economically self-sufficient and contributing citizen in our democratic society.'

8. It is the function, or the goal, or the purpose of the state's high school system, as stated in exhibit D-B to produce 'an individual who is adequately prepared to enter the next sequential phase of life' and to carry out this function or obtain this goal or purpose, recognizing that 'while 7 out of 10 young people do not attend college . . and only 3 out of 4 students graduate from high school' the state Department of Education has assigned increased priority '*to meeting student needs, individualizing instructions, and humanizing education.*'

9. Relator attended all of the 8th semester except the last 27 days. She was enrolled in subjects which would, upon final completion yield her 3 units of credit. On March 31st the respondent principal advised her that for her work done during the 8th

semester, relator was being awarded an additional ½ credit. The evidence does not reveal by what method, standard or criteria relator was awarded ½ credit for her 8th semester work, or the subject to which the additional ½ credit was given.

10. Respondent school, its board of education, its superintendent, principal and faculty owed relator and her parents a duty to assist in planning and approving a course of action which would meet the needs of the relator and at the same time meet the goals, the function, and the purpose of the district's or state's school system. The mere direction of relator and her father to a set of rules which do not define terms or set forth guidelines for interpretation but leaves the true meaning and interpretation to the whims of the person assuming the authority to do so, does not suffice.

11. The board of education, the superintendent and the principal acted unreasonably, arbitrarily and capriciously in denying relator her diploma or assisting her in compliance of their rules. Relator was studying industrial sewing. She had a job doing industrial sewing in an industry in her home town where she perhaps will spend her life. Why wasn't this approved as 'on-the-job' training? Who determined that relator should not be given credit for this training?

12. The board of education, the superintendent and the principal acted arbitrarily and capriciously in allowing respondent only ½ credit for a full schedule of 3 credit units carried for all but 27 days of the 8th semester. Who made this decision to 'update' relator's units of credit? Why was only ½ credit allowed? What was the standard or method used to arrive at the ½ unit credit? One can only infer from the totality of the circumstances that since the board of education at first refused to listen and then thereafter on two different occasions refused to take steps to assist the relator to comply with the rules by approving or disapproving on-the-job training and granting of a 'work release' permit by the superintendent's office and the principal 'dropping' relator from the school rolls without any notice to relator or her parents, that the respondents acted unreasonably, arbitrarily and capriciously.

13. Respondent did not apply the graduating rules the same to the relator as they did for others. Some students graduated with 20 units; some students graduated with 22 units. The respondent refused to give relator a dipolma unless she complied with the rules. The rules as applied to relator required relator to attend 8 full semesters; to carry studies that would yield her 2½ credit units. Upon completion, relator would have and was required to have a total of 23½ units of credit. No other student has ever had to have 23½ units to graduate from the Houston High School. To require relator to have that many units of credit was arbitrary, unreasonable and capricious.

14. Missouri law permits a superintendent of a school to excuse a child 16 years and younger from attending school for the purpose of working. Relator was granted a 'work permit' even though she was more than 16 years old and not required by law to attend school. The court can only infer that after relator had completed more than ½ of the 8th semester and had acquired 21½ units of credit, the work permit was authority for her to take the job at the factory, substituting such work for the remainder of the 8th semester, otherwise why was a 'work permit' issued?

15. The court cannot hold, as relator contends, that the graduation rules (relator's exhibit # 1) are inherently discriminatory, unreasonable and arbitrary in themselves as to all students in the Houston High School and that they have no reasonable relation to promotion of educational pursuits of the individual. A diploma, as stated, is a thing of considerable importance. It signifies that a student has attained a certain achievement—reached a certain goal. What that achievement or goal is can only be determined by the things accomplished. Rules provide the pattern a student must follow and keeps him from losing his direction until he has reached or attained the goal, the achievement. There-

fore, we cannot say that the rules have no reasonable relation to the promotion of educational pursuits of the individual. Graduation rules ought to be flexible and of such context as to provide and meet the needs of the individual student; for not all students are alike—their needs are not all the same. The rules are not intended to treat each student alike in the sense that each must follow a standard course of study and spend a definite number of hours or days in the classroom. The rules provide for a different treatment for different students who elect to be treated differently. The equal protection clause does not mean that one student may not be treated differently than another student. The test is whether the different treatment is an invidious discrimination. As we have heretofore ruled, the rules are needful rules and regulations and are intended to serve and promote the best interest of the function of the school and of its students. Such rules not only should, but must meet the legislative standard in that they must contain a guide or standard applicable alike to all individuals similarly situated. The rules in the instant case provided no guideline or standards. The rules provided for on-the-job training. Relator requested permission to take the job at the factory; she was given a work permit; her units of credit were upgraded ½ unit. She was dropped from the school rolls, after having been enrolled and attended approximately ⅔ of the 8th semester without notice to her or her parents. She was denied a diploma. We can only infer that the conduct and action and lack of action of the part of respondents was unreabonable (sic) and arbitrary, and so find.

## "DOCKET ENTRY JUDGMENT

The court, having considered the evidence and arguments and briefs of counsel, doth find the issues in favor of the relator, and that the respondents have not shown any just cause why a preemptory Writ of Mandamus should not issue to the said respondents as prayed by said relator; Whereupon, it is by the court considered and adjudged that a Writ of preemptory Mandamus be and the same is hereby issued to said respondents, members of the board of education, superintendent and principal of respondent school district, directing respondents to issue or cause to be issued and delivered to relator a diploma bearing relator's name and being in the same form, texture, context and substance as all other diplomas issued by respondents or said school to those graduating from said school on May 25, 1978, and that relator have and recover her costs from said respondents, execution to issue therefor.

Done this 13th day of February, 1979."

FLANIGAN, Chief Judge, dissenting.

I respectfully dissent.

With respect to Bessie's appeal on Count II, I concur in the result. I agree with the majority opinion that Bessie's point relied on violates Rule 84.04(d). Nevertheless I would have concluded to treat the appeal on Count II on its merits with respect to those portions of the graduation rules which have a real and immediate effect upon Bessie in order to determine whether their operation infringes her constitutional rights. Those portions of the requirements which pertain to Bessie are these: To graduate, a student (a) must complete at least 20 units of credit and attend eight semesters in high school or (b) must complete 22 units and attend seven semesters. My research thereon led me to the conclusion that the Houston graduation requirements material to Bessie's case are not inherently discriminatory, unreasonable or arbitrary and are not unconstitutional. See *Dept. of Institutions v. Bushnell*, 579 P.2d 1168 (Colo.banc 1978); *Fiacco v. Santee*, 421 N.Y.S.2d 431 (App.Div.1979). See also 68 Am.Jur.2d Schools § 217, p. 541; 6 A.L.R. 1533; 121 A.L.R. 1471, 1479. Because the majority opinion does not hold otherwise, I see no purpose in setting forth the rationale for my conclusion.

In my view the judgment with respect to Count III should be reversed. The majority opinion agrees with the finding of the trial court that defendants "acted unreasonably, arbitrarily and capriciously in denying Bessie her diploma." It is my view that the

record does not support that finding and that the trial court erred in ordering the school authorities to issue Bessie a diploma. My scrutiny of the record leads me to the conclusion that Bessie will be the only student who will receive a diploma from Houston High School without satisfying the graduation requirements.

" 'Judicial interposition in the operation of the public school system of the Nation raises problems requiring care and restraint. . . . By and large, public education in our Nation is committed to the control of state and local authorities.' *Epperson v. Arkansas,* 393 U.S. 97, 104, 89 S.Ct. 266, 270, 21 L.Ed.2d 228 (1968)." *Bd. of Curators of University of Mo. v. Horowitz,* 435 U.S. 78, 98 S.Ct. 948, 955, 55 L.Ed.2d 124 (1978). On the following page the court, in *Horowitz,* said: "Courts are particularly ill-equipped to evaluate academic performance."

"[C]ourts have traditionally accorded great deference to academic evaluations. . . . School officials have a strong interest in freedom from outside intervention in matters of academic evaluation in order to maintain the integrity of the academic process." *Navato v. Sletten,* 560 F.2d 340, 345 (8th Cir. 1977).

On the other hand school authorities are not immune from judicial supervision in academic matters and when their rules are inherently arbitrary or capricious or are enforced in an arbitrary or capricious manner or by actions indicative of bad faith, the courts will intervene to vindicate the constitutional rights of the injured plaintiff. *Shuffer v. Board of Trustees of Cal. State Univ. and Colleges,* 67 Cal.App.3d 608, 136 Cal.Rptr. 527 (1977); *Greenhill v. Bailey,* 519 F.2d 5 (8th Cir. 1975); *Ladson v. Board of Ed., Union Free Sch. Dist. # 9,* 323 N.Y.S.2d 545, 67 Misc.2d 123 (1971); *Spence v. Bailey,* 325 F.Supp. 601 (W.D.Tenn.1971), 465 F.2d 797 (6th Cir. 1972); *Valentine v. Independent School Dist.,* 187 Iowa 555, 174 N.W. 334 (1919).

A plaintiff who claims that his constitutional rights have been infringed by arbitrary rules or arbitrary actions on the part of school officials has the burden to prove the infringement. *King v. Saddleback Jr. College Dist.,* 445 F.2d 932 (9th Cir. 1971); *Connelly v. Univ. of Vt. and State Agr. Col.,* 244 F.Supp. 156 (D.Vt.1965); *Mustell v. Rose,* 282 Ala. 358, 211 So.2d 489 (1968); *Barnard v. Inhabitants of Shelburne,* 216 Mass. 19, 102 N.E. 1095 (1913). See also *Dominguez v. Beame,* 603 F.2d 337 (2nd Cir. 1979) U.S.App. pending; *Clark v. Mann,* 562 F.2d 1104 (8th Cir. 1977); *Whitsel v. S.E. Local School Dist.,* 365 F.Supp. 312 (N.D. Ohio 1972).

The majority opinion states that some students had graduated with as few as 20 credits and that Bessie had 21½.[1] That statement is true but the graduates had attended eight full semesters and Bessie did not. The majority opinion states that some students graduated after completing only seven semesters while Bessie had completed the seventh semester and most of the eighth semester. That statement is true but the graduates had attained 22 credits and Bessie did not.

In holding in favor of Bessie on Count III the trial court based its decision on certain findings and conclusions, including the following:

1. Defendants "acted unreasonably, arbitrarily and capriciously in denying [Bessie] her diploma or assisting her in compliance of their rules. [Bessie] was studying industrial sewing. She had a job doing industrial sewing in her home town where perhaps she will spend her life. Why wasn't this approved as 'on-the-job training'? Who determined that Bessie should not be given credit for this training?"

2. The granting of the work permit "was authority for Bessie to take the job at the factory" and the issuance of the work permit "substituted such work for the remainder of the eighth semester, otherwise why was a work permit issued?"

1. The testimony of the school authorities was that Bessie had 21 credits, not 21½, and the school records so reflect.

3. Defendants "did not apply the graduation rules the same to Bessie as they did to others." With respect to two other students, one graduated with 20 credits and one graduated without attending the eighth semester.

On their appeal with respect to Count III, defendants assert that the graduation rules have not been applied in an arbitrary manner and that the record will not support the trial court's ruling.

Both sides place considerable reliance on *State ex rel. Sageser v. Ledbetter*, 559 S.W.2d 230 (Mo.App.1977). In that case this court held that a graduation rule, although inherently reasonable, may not be applied "unreasonably, capriciously, arbitrarily, or inequitably" to deny a diploma to a qualified candidate for graduation and that when such application appears, mandamus is an appropriate remedy. The holding in *Sageser* was specifically limited to the fact that the graduation rule had been *applied* in an unreasonable and discriminatory manner.

Proper disposition of defendant's appeal on Count III hinges on whether the graduation rules have been applied in an arbitrary manner or whether, as defendants claim, they have been applied fairly and nondiscriminatorily.

With respect to the "on-the-job training" provision in the graduation requirements, it must be pointed out that Bessie's petition made no claim that she had satisfied the graduation requirements on the basis of "on-the-job training" nor did she claim that she had been denied the benefit of the "on-the-job training" provision of the rule. In her petition Bessie alleged that she had satisfied "all legal requirements" for receiving a diploma and that she had completed the "prescribed course of study" on *January 11, 1978*. On that date the seventh semester ended and Bessie had attained 21 credits.

The graduation requirements state that an on-the-job training program must be approved in advance by the school officials. At no time did Bessie or her father ask the school officials to approve her job at the factory under that program. Indeed when Bessie's father appeared before the school board on March 14, 1978, he made two requests: that the rules be *changed* or that the rules be "*waived*." Bessie did not go to work at the shoe factory until March 31, 1978.

On March 31, after Bessie obtained the work certificate at the superintendent's office, she and her father had a talk with the high school principal, James McLeod. McLeod testified that he discussed with them "these alternative ways she could obtain her diploma under the high school graduation requirements—including the on-the-job training programs." McLeod then gave this testimony:

"Q. And what was her response?

"A. It was not her response, it was her father's response and he said no.

"Q. Was she present?

"A. Yes, sir."

William E. Gladden, president of the school board, testified that when Bessie's father appeared before the school board, "I specifically asked him [about] all of these [the options, including on-the-job training programs, under the graduation requirements] if there were any of those that she would be willing to try to work with the administration and meet her requirements under one of these exceptions and he indicated that they were not interested in that." The foregoing testimony was not disputed by Bessie's father although he was present at the trial and testified for Bessie.

Throughout this litigation it has been the position of Bessie and her father that she was entitled to a diploma solely by reason of attaining 21 academic credits. The trial court's order cannot be justified on the theory that the defendants arbitrarily refused to accord Bessie the benefit of the on-the-job training" portion of the graduation rules.

The mere fact that the superintendent issued a work certificate to Bessie on March 31 did not constitute a waiver of the graduation requirements, nor did it constitute an

approval of the shoe factory job as "on-the-job training." Under § 294.045 the superintendent of the Houston school district was the issuing officer of work certificates. Section 294.080 reads: "Upon the request of a child or of an employer who wishes to employ a child who represents his age to be *sixteen years or more,* the issuing officer upon the presentation of evidence of age . . . *shall* issue a certificate showing the age of the child and this certificate shall be accepted as conclusive evidence of the age of the child." Because Bessie was 17 when she requested the work certificate, the superintendent had the duty to issue it. The granting of the work certificate had no significance with respect to the issues being tried.

Bessie attempted to show that two students were permitted to graduate without meeting the graduation requirements. The record does not contain the names of the two students and they will be referred to as John and Jane.

During John's eighth semester he worked on a part-time basis at an automobile agency. He attended school four hours a day. John attained 22 credits and his outside work had been "set up as a program with the school people" and it had been approved under the graduation requirements. There was no relaxation of the graduation requirements with respect to John.

Jane did not attend the eighth semester and did not attend the seventh semester "after Christmas." Jane had 22 credits. She was unable to attend school because of "health problems which were obvious," testimony which the parties interpret to mean that Jane was pregnant. According to the testimony of principal McLeod, Jane attended a sufficient number of days during the seventh semester to receive credit for a full semester's attendance. There was no relaxation of the graduation rules with respect to Jane.

Superintendent John Webb testified that he had checked the records at Houston High School and "no student has graduated from Houston High who did not comply with the graduation requirements." Nothing in the record impeaches that testimony.

Unlike the situation in *Sageser,* supra, there is no evidence to show that the graduation rules of Houston High School have been applied in an arbitrary or discriminatory manner.

Count III of Bessie's petition alleged that she had satisfactorily completed the prescribed course of study on January 11, 1978, and thus was entitled to a diploma. The evidence failed to support that allegation. Bessie has failed to prove that the graduation rules were inherently arbitrary or were applied arbitrarily. It follows that the school authorities were justified in refusing to issue her a diploma and the judgment with respect to Count III should be reversed.