**JEFFERSON BANK & TRUST COMPA-NY, a Missouri Corporation,
Plaintiff-Respondent,**

v.

**Gilbert B. HORST and Joanne M. Horst,
Defendants-Appellants.**

No. 41302.

Missouri Court of Appeals,
Eastern District,
Division Two.

April 1, 1980.

Gerritzen & Gerritzen, Ray A. Gerritzen, St. Louis, for defendants-appellants.

Millsap, Eyerman & Heitmann, Pamela S. Wright, Clayton, for plaintiff-respondent.

GUNN, Presiding Judge.

Plaintiff-respondent Jefferson Bank & Trust Co. brought suit against defendants-appellants Gilbert and Joanne Horst for deficiency judgment on a note secured by a mobile home. Defendants counterclaimed alleging duplicity by Jefferson Bank in its lending arrangements in conjunction with Manchester Mobile Homes, Inc., the seller of the mobile home. The trial court granted Jefferson Bank's motion for summary judgment on its petition for the sum of $2,094 and against defendants on their counterclaim.

On appeal defendants assert that genuine issues of fact and law exist as to whether Jefferson Bank and Manchester Mobile Homes caballed and colluded to increase the price of the mobile home and the finance charges for its payment and as to whether Jefferson Bank took the requisite steps to obtain the best price for the repossessed mobile home in mitigation of damages. We affirm. In so affirming the trial court's granting of summary judgment, we cognize that summary judgment is an extreme action which may only be granted when, after reviewing the record in the light most favorable to the appellants, there is no genuine issue as to any material fact nor any basis for their recovery. *Cooper v. Yellow Freight System, Inc.*, 589 S.W.2d 643 (Mo. App.1979).

In 1974 defendants entered into negotiations with Manchester Mobile Homes, Inc. for the purchase of a mobile home. A price was quoted by a Manchester Mobile Homes salesman, and defendants were told that financing could be arranged through Jefferson Bank with payments running approximately $100 per month for twelve years. A bargain was struck, and defendants executed a "Retail Installment Contract Security Agreement" and a promissory note supplied by Manchester. A few spaces were left blank on the agreement and note, such as Manchester Mobile Homes' name on the security agreement as the dealer selling the home and as payee on the note. But, except for these two items and the serial number for the mobile home, all other significant items on the agreement and note were completed at the time of the signing by the defendants: the cost of the mobile home, down payment and trade in allowance, sales tax, title fee, unpaid balance to be financed, the finance charge, total payments due, deferred payment price and the annual percentage rate.[1] The only significant blank which was later completed was the insertion of Manchester Mobile Homes as the dealer selling the mobile home and as the payee on the note. There is no dispute that Manchester Mobile Homes was the dealer, but defendants contend that Jefferson Bank was to have been designated as the payee of the note. Under the terms of the security agreement and note, defendants were to pay a total of $15,069.60 payable in 144 consecutive monthly installments of $104.65 each. Defendants acknowledge that the term and amount of monthly payments were what had been discussed and agreed with Manchester Homes.

After defendants took possession of the mobile home, Manchester Mobile Homes assigned the note to Jefferson Bank pursuant to an existing agreement between them.

---

1. Mr. Horst could not remember with certainty whether the annual percentage rate was complete before signing the agreement. But Mrs. Horst acknowledged that the item had been filled in. Her admission is sufficient to establish that all such items were complete prior to signing, as Mr. Horst's uncertainty and equivocal answer would be of no probative value on that issue. *Rossmann v. G.F.C. Corp. of Mo.*, 596 S.W.2d 469 (Mo.App.1980); *Baker v. Brinker*, 585 S.W.2d 256, 258 (Mo.App.1979).

Defendants thereupon made their payments directly to Jefferson Bank from May, 1974 through November, 1976 before defaulting on the note. In February, 1977 Jefferson Bank repossessed the mobile home and had it appraised by a mobile home broker. The appraisal value was $6,795. Attempts to find a buyer for defendants' mobile home were made through the appraisal broker, from Manchester Mobile Homes and from Edward Steinbeck, the owner of the mobile home park where the collateral was located. Jefferson Bank first refused Steinbeck's offer of $6,000 but later accepted his $6,800 offer. After allowance of the $6,800, a $2,094 deficiency existed on the promissory note.

Jefferson Bank brought suit against defendants for a deficiency judgment. Defendants counterclaimed, contending that the note was fraudulently procured as they believed that payee on the note was to be Jefferson Bank, not Manchester Mobile Homes; that the assignment of the note to Jefferson Bank caused them damage by reason of some alleged scheme to increase the ultimate cost of the mobile home by interest payments or otherwise. The trial court granted Jefferson Bank's motion for summary judgment and denied defendants' counterclaim.

■ We first consider the counterclaim. The pertinent elements in this case for fraudulent misrepresentation which must be proven by the parties asserting the fraud are: a representation; its falsity; its materiality; reliance on the truth of the representation; and consequent and proximate damage. *Prudential Property and Casualty Ins. Co., Inc. v. Cole*, 586 S.W.2d 433 (Mo.App.1979); *O'Shaughnessy v. Ward Aircraft Sales & Service Co., Inc.*, 552 S.W.2d 730 (Mo.App.1977).[2] Defendants charge malversation by reason of the insertion of Manchester Mobile Homes' name in the blank space on the promissory note and security agreement as the payee when they had been led to believe that Jefferson Bank was to be the payee. But assuming that there was some dissemblance by placing the name of Manchester Mobile Homes as payee when defendants expected to pay Jefferson Bank directly, where is the harm?[3] What is the materiality or consequent damage? We perceive none, as indeed none exists. Jefferson Bank through the assignment from Manchester Mobile Homes did become the payee for defendants' debt. Nothing was changed according to defendants' understanding of what was to take place. The amount of the debt, the finance charge, the time for payments, the interest rate, the amount of monthly installments were unpermuted. Even the payee—Jefferson Bank—was as defendants anticipated. Thus, assuming some misrepresentation through the initial insertion of Manchester Mobile Homes as payee, it was of no materiality, nor were there any damages to defendants; defendants were not mulcted. They acknowledged that they were not precluded from obtaining their own finances; that it was an accommodation to them for Manchester Mobile Homes to obtain financing arrangements from Jefferson Bank. And they did, in fact, make the payments to the payee they expected and in the amounts they anticipated. Whatever arrangements that may have existed between Manchester Mobile Homes and Jefferson Bank had no adverse effect on defendants. Therefore their postulation in support of the counterclaim is qualitatively deficient and was properly denied. *O'Shaughnessy v. Ward Aircraft Sales & Service Co., Inc.*, 552 S.W.2d at 733, 736.

■ The defendants' other challenge to the judgment relates to whether Jefferson Bank "took any reasonable steps to sell the repossessed mobile home for the best price obtainable and mitigate defendants' dam-

---

2. The other elements of fraudulent misrepresentation are: the speaker's knowledge of the false representation, the hearer's ignorance of the truth, intent that the representation be acted upon, the hearer's ignorance of the falsity and the right to rely thereon.

3. We will not delve into the law regarding blank spaces in a contract—whether the contract is incomplete or whether specific authority was given to complete the contract or whether the intention of the parties was not fulfilled by the completion of the blank space.

ages." Although not mentioned in defendants' brief or argument, § 400.9–504(3), RSMo 1978, concerning the commercial reasonableness of a sale of repossessed security, is the only statute to be applied in this situation. That section provides that "disposition of the collateral may be by public or private proceedings" and requires that "every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable." Additionally, "reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor." Defendants contend that because Jefferson Bank obtained "only one bid"[4] and neither advertised the sale of the collateral nor offered the sale to the general public, it did not obtain the best price. But "the fact that a better price could have been obtained by a sale at a different time or in a different method from that selected by the secured party is not of itself sufficient to establish that the sale was not made in a commercially reasonable manner." § 400.-9–507(2), RSMo 1978; *Wirth v. Heavey*, 508 S.W.2d 263 (Mo.App.1974). *See also: Bank of Poplar Bluff v. Corbin*, 595 S.W.2d 443 (Mo.App.1980). Regarding notice, the evidence before the trial court was that Jefferson Bank had given notice of the pending sale to defendants; that is not disputed by them. *See: Gateway Aviation, Inc. v. Cessna Aircraft Co.*, 577 S.W.2d 860 (Mo.App. 1978) (no notice was given to the debtor of the proposed sale of collateral).[5]

Disdaining reference to the Uniform Commercial Code, defendants rely solely on *Regional Inv. Co. v. Willis*, 572 S.W.2d 191 (Mo.App.1978), in their challenge to Jefferson Bank's "reasonable efforts" to mitigate the damages. But *Willis* involving a trustee's sale of real estate is manifestly not apt to this U.C.C. proceeding.

4. There were, in fact, two bids.

5. With regard to notice requirements, *see*: 1972 Wash. U.L.Q. 535. Jefferson Bank's evidence was that notice of the proposed sale was given to defendants, who do not raise any issue

As to the sale, the trial court obviously determined that Jefferson Bank acted reasonably in applying its methods for the sale of the collateral and that the price obtained upon the sale was reasonable and that defendants suffered no compensable damage. We, too, considering the record before us concur in that determination. *Wirth v. Heavey*, 508 S.W.2d at 269.

The record sustains the commercial reasonableness of the sale of the security and thus the deficiency judgment against defendants after the sale was proper. There was no error in granting Jefferson Bank's motion for summary judgment and in the denial of defendants' counterclaim.

Judgment affirmed.

STEPHAN and PUDLOWSKI, JJ., concur.

of lack of notice. *See: Alco Standard Corp. v. F & B Manufacturing Co.*, 132 Ill.App.2d 24, 265 N.E.2d 507 (1970) (requiring defendants to raise lack of notice as an affirmative defense).