Harriett W. KELLY, Individually and as Administratrix of the Estate of Alexander D. Kelly, deceased, Plaintiff-Respondent,

v.

Harriet E. MAXWELL, Defendant-Appellant.

No. 42990.

Missouri Court of Appeals, Eastern District, Division One.

Feb. 2, 1982.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 19, 1982.

Robert T. Ebert, Clayton, for defendant-appellant.

Andrew S. Meyer, Henry A. Freytag, St. Louis, for plaintiff-respondent.

PER CURIAM.

Plaintiff, as administratrix of her husband's estate, brought an action to have certain shares of stock declared an asset of the decedent's estate. Defendant, the only daughter of the decedent, appealed from judgment for the plaintiff administratrix. We affirm.

The decedent, Alexander D. Kelly, was born in 1892 and worked as an engineer-accountant until he retired in 1968. His first wife, Fannie, and he had one child, Mrs. Maxwell. Fannie died in 1964. At that time 3,535 shares of stock acquired between 1949 and 1963 were registered on the books of Laclede Gas Company in the names of Alexander D. Kelly, his wife, Fannie, and their daughter, Mrs. Maxwell, as joint tenants with right of survivorship and not as tenants in common. In 1965 an additional 1,000 shares were issued to Mr. Kelly and Mrs. Maxwell as joint tenants with right of survivorship and not as tenants in common.

In November, 1967 the plaintiff met Mr. Kelly while he was a patient at a hospital where she worked as a nurse. On or about Christmas, marriage was discussed, although the evidence conflicted as to who proposed to whom. In any case, they were wed on January 6, 1968. It was a "marriage of convenience." The amicability of the relationship survived for about six weeks and then seriously deteriorated. Plaintiff continued to take care of Mr. Kelly until his death in December, 1975.

An additional 500 shares of Laclede Gas Company stock were issued to Mr. Kelly

and Mrs. Maxwell in October, 1970. In November, 1970 the 3,535 shares which bore Fannie's name were reissued, so that there were then 5,035 shares of stock registered in the name of Alexander D. Kelly and his daughter Mrs. Maxwell as joint tenants with right of survivorship and not as tenants in common. These shares were represented by 19 certificates.

In May of 1972, plaintiff commenced an action against decedent for legal separation and maintenance. On November 16, 1972 the decedent caused the 5,035 shares of stock to be listed on the corporation's books in his daughter's name alone, so that the defendant Mrs. Maxwell was the only registered owner, and had new certificates issued to reflect this change.

The stock certificates were kept in a safe deposit box in St. Louis. The defendant lived in Arizona. The defendant and her father owned the box jointly; she had a key and knew the password. She went to the safe deposit box on occasion, but always with her father.

It was defendant's practice to sign papers when requested to do so by her father. On occasion she would sign blank stock transfer forms, commonly called "stock powers," and return them to her father. These printed forms, signed in blank, would permit changes to be made in ownership of the stock when properly filled in. At least thirteen such stock powers were signed by defendant and given to her father. One was signed in 1972 or 1973, but defendant could not recall when she executed the other forms.

Defendant knew she was listed as an owner of the stock. It was her understanding that her father wanted his property to be in both names because he wished it to go to her upon his death without probate and, additionally, because he wanted to keep it from his second wife, the plaintiff. Defendant was not aware that the Laclede Gas Company stock was transferred to her and the certificates issued in her name alone in 1972. The decedent received the dividends from that stock and did not account for their disposition. Some years he would direct his daughter to report those dividends as her income for tax purposes and she would do so. In such cases he would reimburse her for corresponding taxes she was required to pay. This was the practice with respect to other jointly held property.

In June of 1975 the decedent made arrangements to borrow $31,000 from Mercantile Trust Company, and offered the Laclede Gas stock as collateral. The loan officer wrote the defendant, requesting that she sign an Agreement of Pledge and additional blank stock powers. The defendant signed the papers and returned them on the advice of her father. The money was lent to the decedent and he used it to purchase stock in Duke Power Company. The Duke Power Company stock was registered in the decedent's name alone. Following the loan, dividends from the Laclede Gas Company stock were sent to the Mercantile Trust Company and were applied against the loan.

The blank stock powers were in decedent's possession at the time of his death. Although he had had a will prepared by his attorney, no executed will was found. The will was drafted after the marriage but before the action for separate maintenance was brought by plaintiff in 1972. The attorney on decedent's directions prepared the will so that all property would go to his daughter, Mrs. Maxwell, but advised decedent that plaintiff could elect to "take against the will." The will included a recitation that adequate provision for decedent's wife had been made during his lifetime.

Plaintiff was appointed administratrix of decedent's estate by the Probate Court of the City of St. Louis and initially brought this action to determine title to personal property in that court. The cause was certified to circuit court. Before trial plaintiff dismissed two defendants (a bank and a savings and loan) who had been named

along with Mrs. Maxwell. Pursuant to a court order, the Duke Power Company stock was sold and the proceeds used to satisfy the loan of Mercantile Trust Company; the stock certificates representing the 5,035 shares of Laclede Gas Company stock were deposited into the registry of the court. After evidence at trial was adduced, the plaintiff amended her petition to conform to the proof. For her alternative Count VI she pled:

"During his lifetime decedent exercised sole and unrestricted control and dominion over the said stock and never divested himself of any beneficial interest therein and that he owned same at his death as sole owner and that any other name appeared on the certificates therefor merely as an attempt to defeat the Laws of Descent and Distribution and to avoid probate.

"WHEREFORE, Plaintiff prays this Court order and decree that said stock be and is a proper asset of decedent's estate, and such other orders as may be just."

The trial court entered numerous findings of fact and conclusions of law. Those pertinent to this appeal are:

"That defendant, during her father's lifetime, did not consider the said Laclede Gas Company stock to be hers; that she did consider it to be her father's investment which he wanted her to have upon his death; and that she did not feel that she had the right to interfere with his control of it.

"That decedent, whenever he caused the said stock to be registered in joint names, intended thereby to avoid probate and to provide for devolution of his title thereto at his death.

"That when he terminated the joint registration of the said stock in November of 1972 and caused it to be registered in the sole name of his daughter, defendant herein, decedent did not intend to transfer title to her.

"That decedent never intended by registering the stock in the name of defendant, either jointly or solely, to transfer any interest to her during his lifetime.

"That decedent retained until his death the sole dominion and control of the stock here in issue.

"That decedent's purpose in causing the said stock to be registered in defendant's name alone was to circumvent and defeat any marital rights therein which plaintiff then had, and any rights therein by way of inheritance which she might have in the event she survived him.

*"Conclusions of Law*

"1. That decedent, Alexander D. Kelly, retained and exercised sole and unrestricted control and dominion over the 5,035 shares of the common stock of Laclede Gas Company here in issue, and never divested himself of any beneficial interest therein; and that at his death he was the sole owner thereof;

"2. That said stock is, and should be administered as, a part of decedent's probate estate;"

Mrs. Maxwell, the decedent's daughter and defendant below, appealed.

■ Under *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976), the decree or judgment of the trial court in a bench-tried case is to be sustained "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." For reasons discussed below, our examination of the record satisfies us that there was ample evidence to support the facts found and inferences made therefrom by the trial court in the findings set out above; and thus the judgment does not fail to meet either of the first two criteria set out in *Murphy*. We are not bound, however, by the trial court's conclusions as to the legal effect of the findings, *State ex rel. Sisco v. Buford*, 559 S.W.2d 747, 748 (Mo. banc 1978), and review the case in that light.

■ The elements of a valid gift of personal property are: the donor's present

intention to make a gift; delivery of the property by the donor to the donee; and acceptance by the donee, whose ownership is effective immediately and absolutely. *In re Estate of Wintermann*, 492 S.W.2d 763, 768 (Mo.1973); *Roth v. Roth*, 571 S.W.2d 659, 666 (Mo.App.1978). Valid inter vivos gifts of stock between a donor-parent and his child have frequently been recognized by the courts where the ownership on the corporate books is transferred to the child and new certificates are issued. In arriving at such conclusions, the courts freely indulge in presumptions in order to find the necessary elements of a gift. "In the case of a transfer of stock to children or to persons considered 'almost as children,' . . . [citation omitted] the law will raise a presumption of a gift from parent to child where it would not be presumed between strangers." *Firestone v. Yoffie*, 494 S.W.2d 394, 399 (Mo.App.1973). Such presumptions are, however, rebuttable. *Roth*, supra, at 667.

■ In making its findings, the trial court focused on the lack of donative intent and the donor's continued retention of dominion and control of the stock. These findings are fully supported by the evidence. At all times, the dividends were paid to Mr. Kelly or for his benefit, indicating that he did not intend to give his daughter a present interest in the stock. Mr. Kelly also used the stock to secure a loan made so he could purchase the Duke Power Company stock for himself. Such conduct with respect to corporate stock subsequent to an alleged gift of the stock from parent to child indicates there was no intent to make a present gift. See *Trautz v. Lemp*, 329 Mo. 580, 46 S.W.2d 135, 145 (banc 1932). The fact that Mr. Kelly had his daughter

execute blank stock powers and kept a supply of such forms at hand until his death also shows he intended to maintain control while he lived.

There also is ample evidence that the decedent, Mr. Kelly, did retain dominion and control over the stock, supporting the inference that there was no delivery, constructive or actual, to his daughter. Although only the daughter's name appeared on the certificates and the corporation's books as the owner, Mr. Kelly did have the authority, by virtue of the stock powers mentioned above, to negotiate the Laclede Gas stock.[1] On this very issue, i.e. delivery *vel non*, Judge Simeone wrote in *Firestone v. Yoffie*, 494 S.W.2d 394, 400 (Mo.App. 1973), "The test is whether the donor put it out of his power to repossess the property and relinquished dominion." In the instant case, Mr. Kelly carefully retained the stock powers, which his daughter dutifully and willingly signed in blank, for the obvious purpose of retaining dominion and control of the stock.

Defendant suggests that decedent's directive to his daughter to sign additional stock powers when the Laclede Gas stock was pledged shows that the father's ability to use the stock was limited and that this limitation was recognized by all concerned. This does not reduce the impact of the fact that Mr. Kelly had his daughter sign blank powers years in advance of that transaction. Plaintiff's suggestion that Mr. Kelly did not use the existing stock powers when the stock was pledged because he wanted to preserve his supply is equally plausible. The significant point is that the father retained all incidents of ownership including dividends and the right to transfer the stock. Further evidence of domin-

1. The defendant's argument that those stock powers were void or ineffective while the stock was registered in the joint names of the father and daughter since the father had never signed the forms and so they were not executed by all "appropriate persons" as required by § 400.8–308(3)(e) RSMo 1978 is without merit. Certainly the father could have added his endorse-

ment to any form or the certificates themselves with little trouble. That he did not sign any such blank forms indicates, if anything, that he did not intend to part with control. In any case, § 400.8–308(3)(b)–(g) lists situations when persons *other than* the registered owner can endorse securities for transfer and does not support plaintiff's position at all.

ion and control is the father's occasional practice of directing his daughter to report the dividends as her income for tax purposes and her complete compliance.

Although the fact that the daughter had access to the safe deposit box where the stock was kept is evidence relevant to the question of whether a gift had been made, its effect is diminished by the fact that the box was in St. Louis and appellant lived with her husband and four children in Arizona. Moreover, she never showed any indication to exercise independent control of the box, opening it only in the presence of and at the direction of the father. Finally, it is apparent that she never accepted the stock as a gift for the reason that she looked on it as property of her father while he was alive. Cf. *Hoefel v. Hoefel,* 533 S.W.2d 704, 708 (Mo.App.1976).

The trial court properly declared and applied the law in holding that the decedent was the sole owner of the stock at the time of his death and that it should be administered as part of his estate.

The judgment is affirmed.

All Judges concur.