**SOUTHGATE BANK AND TRUST COMPANY, Plaintiff/Respondent,**

v.

**Charles B. MAY, Defendant,**

**and**

**Billy J. May, Defendant/Appellant.**

No. WD 35874.

Missouri Court of Appeals, Western District.

Aug. 20, 1985.

S.W. Longan, III, Patricia L. Lear-Johnson (argued), Kansas City, for defendant-appellant.

Dana K. Kaiser (argued), Kansas City, for plaintiff-respondent.

Before LOWENSTEIN, P.J., and NUGENT and BERREY, JJ.

NUGENT, Judge.

Defendant Billy J. May appeals from a deficiency judgment in favor of plaintiff Southgate Bank and Trust Company based upon a promissory note and security agreement. The bank sold defendant's repossessed collateral, a pickup truck. The defendant claims that the bank sold the truck while negotiations for its redemption between the parties' attorneys were continuing. He argues that the bank did not give him reasonable notice of its intent to sell the collateral and, therefore, the bank is estopped to assert a claim for a deficiency. We agree and reverse.

In 1979, defendant, Charles May, son of defendant, Billy May, purchased a Ford pickup truck. He signed a security agreement and promissory note, and his father signed as a guarantor. The note and security agreement were later sold and assigned to the plaintiff bank.

Charles May defaulted on the payments, and the bank sued him and his father. The father was served with the petition but not the son. On March 1, 1982, the bank repossessed the truck. Billy May was notified by certified letter dated March 1, 1982, that the collateral would be sold at a private sale twenty days from the date of the letter. He was further notified that he could redeem the truck by paying the $3,960.39 balance due and the estimated cost of repossession, $350.00. Mr. May retained S.W. Longan as his attorney.

Mr. Longan contacted the bank's attorney, Edwin Tyson, and began negotiations for redemption. Billy May's credit union agreed to lend him $2,500 to redeem his vehicle. Mr. Longan offered Mr. Tyson that amount as a full settlement of the debt, but the bank rejected the offer. The parties agreed, nevertheless, to continue negotiating because defendant believed that his credit union would lend him additional funds.

The attorneys agreed that the trial date for the suit would be continued until after negotiations were concluded one way or the other. At trial, Mr. Longan testified that he had an understanding with the bank's

attorney that the bank would do nothing with the collateral while negotiations continued and that he understood everything concerning the debt was open to negotiation.

Continuing the negotiations, in early April defendant made a second offer of $3,000. Mr. Tyson told Mr. Longan that he would consult with the bank about the offer. Mr. Clement, the bank's officer, testified for the bank that, in fact, he was aware from the beginning of Mr. May's interest in redeeming the collateral, that he knew of the negotiations to settle the bank's claim and had received and rejected defendant's $2,500 offer of settlement. He also testified that, in the meantime, the bank sought and obtained a number of private bids for the pickup.

On June 15, 1982, having heard nothing from Mr. Tyson, defendant's counsel wrote to the bank's attorney asking for a response. Mr. Longan had still not received a response or any further notice from the bank or its attorney of its intent to sell the collateral or of the actual sale when he was informed by his client that the bank had sold the vehicle. Without further notice to defendant, the bank had sold the truck at private sale on April 29 for $1,375.00. Defendant's attorney wrote the bank's attorney on July 1 expressing his astonishment that the collateral had been sold while negotiations were still in progress. Mr. Tyson's response was as follows:

> I'm afraid I'm a little bit in the middle of this, since it's passed through several hands other than my own. What I have found out and what I think has happened is your initial offer was $2,500.00 and a release from the bank and we declined. That your offer was then upped to $3,000.00 plus a release and our bank was still unwilling to give a release on this and declined the $3,000.00 and re-

lease offer. The bank therefore, went ahead and sold the automobile to the highest bidder.

On June 21, 1982, the bank wrote to defendant that it had sold the collateral and that the deficiency due the bank from defendant was $1,240.01.[1] The bank filed an amended petition praying for a total judgment $1,759.01.

Before trial, defendant filed a motion for summary judgment supported by his affidavit which recited that "[d]uring the period of March 1, 1982, to April 29, 1982, and beyond, defendant was in the process of negotiating adequate arrangements for redemption by and through my attorney S.W. Longan, III, with the attorney for the plaintiff." The bank filed no counter affidavit. It filed only suggestions in opposition to the motion, but in those suggestions it acknowledged that negotiations were being conducted.

Upon trial to the court the bank presented no evidence that before the April 29 sale it had ever informed defendant or his counsel that his $3,000 offer had been rejected. It presented neither evidence that it had given defendant a second notification of an intent to sell, nor evidence contesting the existence of the attorneys' understanding that the collateral would not be sold pending negotiations, nor evidence that its attorney was not authorized to make such an agreement. The bank made no effort at trial to contradict Mr. Longan's testimony.

At the conclusion of evidence, the trial judge made two findings relevant to the questions presented on this appeal. First, he found that the twenty-day notice of private sale was given by the bank and received by defendant May. Second, he found that negotiations had been carried on between counsel, although "not carried on with vigor by the defendant...." The

---

1. The bank's June 21 letter included a statement showing the following accounting of the sale:

Payoff balance at time of repossession: $3,933.68

Total credits received ___363.28

(Insurance cancellations, etc.)

Payoff minus credits $3,570.40

| | | |
|---|---|---|
| Expenses of repossession | | $ 640.79 |
| Balance due on account at time of sale | | $4,211.19 |
| Collision loss insurance settlement | $1,596.18 | |
| Sale price | 1,375.00 | |
| | | 2,971.18 |
| Total deficiency: | | $1,240.01 |

court then concluded that the bank was not estopped, as defendant had insisted, because defendant May had not "changed his position for the worse. Economically, he was no worse off than he was before. All he had done was, apparently, engaged his credit union to promise him a $3,000 loan if he were able to get title clear to the car...." Accordingly, the court entered judgment for the bank in the amount of $1,240.01 and $180 for its attorney's fee.

On this appeal, defendant May contends, first, that the bank failed to give him reasonable notice of the private sale as required by the Uniform Commercial Code, § 400.9–504(3) [2] and, therefore, is not entitled to a deficiency judgment. His second contention is that the bank sold the truck without giving him reasonable notice of the sale and while he was negotiating for the redemption of the truck and, therefore, the bank is estopped to claim a deficiency against him. Finally, defendant asserts that the trial court erred in denying him summary judgment.

We believe that defendant's second point is dispositive and, therefore, address it to the exclusion of the first and third points.

■■■ Where the question presented on appeal of a court-tried case is whether the judgment is supported by substantial evidence, the reviewing court is bound to accept as true all evidence favorable to the prevailing party and all the reasonable inferences to be drawn from it, disregarding all contradictory evidence. *State* ex rel. *Miller v. McLeod*, 605 S.W.2d 160, 162 (Mo. App.1980). Also, the trial judge as the trier of fact is free to believe all, none or only part of the testimony of any witness. *Husky Industries, Inc., v. Craig Industries, Inc.*, 618 S.W.2d 458, 460 (Mo.App. 1981). Thus, ordinarily in a court-tried case the appellate court is bound by the trial court's findings of fact. *Murphy v.*

*Carron,* 536 S.W.2d 30, 32 (Mo.1976) (en banc).

■■■ Where the issue on appeal is not the sufficiency of the evidence, however, the appellate court is not bound and need not defer to the trial court's conclusions as to the legal effect of such findings of fact. *Schroeder v. Horack*, 592 S.W.2d 742, 744 (Mo.1979) (en banc); *State ex rel. Sisco v. Buford,* 559 S.W.2d 747, 748 (Mo.1978) (en banc); *Kelly v. Maxwell,* 628 S.W.2d 931, 934 (Mo.App.1982). Moreover, where the facts are derived from the pleadings, stipulations, exhibits, and depositions, *MFA Mutual Insurance Co. v. Home Mutual Insurance Co.*, 629 S.W.2d 447, 450 (Mo.App. 1981), or where the evidence is not controverted and "the case is virtually one of admitted facts," *Murphy v. Doniphan Telephone Co.*, 347 Mo. 372, 147 S.W.2d 616 (1941), and *State ex rel. Wenneker v. Cummings,* 151 Mo. 49, 52 S.W. 29, 31 (1899), or where the evidence is not in conflict, *Eckle v. Ryland*, 256 Mo. 424, 165 S.W. 1035, 1038 (1914), and *General Electric Co. v. Interstate Electric Co.*, 204 S.W. 933, 934 (Mo.App.1918), no deference is due the trial court's judgment. Where credibility of witnesses is not involved, the rule of deference mandated by Rule 73.-01(c)(2) is not applicable. *Case v. Universal Underwriters Insurance Co.*, 534 S.W.2d 635, 637 (Mo.App.1976).

■■ In this case, the trial court based its decision upon the legal conclusion that defendant had suffered no detriment, that he had not changed his position for the worse. In reaching that legal conclusion, the court accepted as established the fact that the attorneys had entered into negotiations for the redemption of the pickup after the bank gave defendant the notice required by the U.C.C., § 400.9–504(3). In other words, the court believed the testimony of defendant's attorney backed by the acknowledge-

---

**2.** All sectional references are to Revised Statutes of Missouri.

Section 400.9–504(3) provides in part that a secured party may dispose of collateral by public or private proceedings and that "reasonable

notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor...."

ment of those negotiations contained in Mr. Tyson's letter.

Accordingly, we conclude that the uncontraverted evidence before the court establishes beyond any dispute that before and at the time of the April 29 sale the parties' attorneys were still negotiating. Mr. Clements acknowledged that negotiations had begun almost at once. Mr. Tyson's letter confirms the fact that Mr. Longan correctly assumed that negotiations had never terminated. Moreover, the trial judge found as a matter of fact that the parties' attorneys were negotiating in an attempt to settle the case.

The established fact of continuing negotiations, which Mr. Tyson's letter confirms and the bank has acknowledged in its suggestions in opposition to defendant's motion for summary judgment and has never disputed in the trial court or in this court, leads us to the inescapable conclusion that the parties had agreed to postpone the sale. Otherwise, we would be compelled to draw the absurd conclusion that defendant made two successive offers and that the bank's attorney successively agreed to convey both offers to his client and did so *without* an understanding that the truck would be there for defendant if and when a settlement was successfully negotiated. Experienced lawyers know that such agreements are in their very nature quite common. They should be encouraged.

Was the trial court free to ignore that inference? No. At trial, the defendant devoted his proof almost exclusively to the agreement to postpone the sale in an attempt to negotiate a settlement and a redemption of the pickup. The bank's attor-

ney admitted that defendant had made the two offers and that he as the bank's attorney had conveyed those offers to the bank. The bank's officer, Mr. Clement, testified that he received the $2,500 offer, and the bank's attorney's letter established those facts beyond question. His letter specifically stated that he had conveyed both offers to the bank. Thus, the heart of the defense was established out of the mouth of the bank.

Those established facts compel the inferences that the bank's attorney agreed to continue the trial of the case *and* to cause the sale of the pickup to be delayed so that defendant could redeem the truck if and when he reached a settlement with the bank through its lawyer.[3]

With those facts in mind, we turn to a consideration of defendant's Point II in which he contends that the bank sold the pickup truck without giving him notice and while negotiations were continuing for redemption of the truck and that the bank's conduct in doing so was in bad faith which estops the bank from claiming a deficiency judgment.

In Missouri the doctrine of "equitable estoppel" or "estoppel in pais" rests upon a rule of law that precludes one from denying his own expressed or implied admission that another person has in good faith and pursuant to its purpose accepted and acted upon. *Brooks v. Cooksey,* 427 S.W.2d 498, 504 (Mo.1968). Three things must occur to raise the estoppel—*first,* an admission, statement or act inconsistent with a claim later asserted and sued upon; *second,* action by the other party on the faith of such conduct; and, *third,* injury to

---

3. In effect, both at trial and on appeal, the bank has simply demurred to defendant's defense, asserting that under the U.C.C. it retained a complete right to sell the pickup at any time after reasonable notice. That position totally ignores defendant's theory of defense, that is, that after due U.C.C. notice was given defendant, the bank temporarily relinquished its right to sell at any time and agreed to defer for the time being the exercise of its right to sell the collateral. The bank is simply blind even now to the significance of the defense and how it renders totally irrelevant plaintiff's earlier compliance with the U.C.C. So long as the bank complied with the U.C.C., it was free to sell the truck after the twenty days passed *unless,* as in this case, for its own reasons it freely agreed to postpone the exercise of that right pending negotiations. The U.C.C. does not require the bank in those circumstances to sell the collateral at any specific time after it gives reasonable notice of the private sale nor does the U.C.C. prevent the bank from postponing such a sale in an effort to reach a redemption settlement with the debtor.

the other party in allowing the first party to contradict or repudiate its original admission, statement or act. *Peerless Supply Co. v. Industrial Plumbing & Heating Co.*, 460 S.W.2d 651, 665–66 (Mo.1970); *Emery v. Brown Shoe Company*, 287 S.W.2d 761, 767 (Mo.1956). Where the acts of a person induced another to refrain from acting in a particular manner, he is estopped from taking any position inconsistent with his inducement which led to the prejudice of the other person. *Liese v. Sackbauer*, 222 S.W.2d 84, 86 (Mo.1949).

The courts will intervene by way of equitable estoppel to prevent a gross injustice to a contracting party. *Jones v. Linder*, 247 S.W.2d 817, 819–20 (Mo.1952). An equitable estoppel cannot arise unless justice requires it, and it may only be used as a shield to protect one from an otherwise inescapable loss. *Caraveo v. Dumas-Milner Chevrolet Corp.*, 377 S.W.2d 482, 485 (Mo.App.1964). The purpose of estoppel is to restore the parties to the positions they would have occupied if the predicate of the estoppel had never existed. *Id.* Estoppel is an affirmative defense, and the burden of proof is upon the one asserting it. *Peerless Supply Co. v. Industrial Plumbing & Heating Co.*, 460 S.W.2d at 666. An equitable estoppel rests largely upon the facts and circumstances of the particular case. Any attempted definition usually amounts to no more than a declaration of an estoppel under the facts and circumstances of that case. *State* ex rel. *Consolidated School District v. Haid*, 328 Mo. 739, 41 S.W.2d 806, 808 (Mo.1931); *Miskimen v. The Kansas City Star Co.*, 684 S.W.2d 394, 400–01 (Mo.App.1984).

In this case the three elements required for equitable estoppel are present. *First,* the evidence showed that the bank through its attorney of record made an agreement that is inconsistent with its later position, that is, it agreed that it would delay the sale of the pickup truck until

negotiations for its redemption ended but later asserted a right to sell the truck before negotiations terminated. *Second,* defendant May, acting on the faith of that agreement, sought to obtain the money to redeem the truck, continued negotiating by making increasing offers of settlement *and* awaited the bank's response to his $3,000 offer. *Third,* defendant May was injured and will suffer irreparable injury if the bank is allowed to repudiate its agreement and charge defendant with the deficiency in that he was denied the opportunity to acquire and offer more money to redeem the truck, he was denied the opportunity to outbid the buyer of the truck at the private sale and perhaps to minimize the deficiency and to redeem and acquire that particular truck for himself.

The trial court concluded as a matter of law that defendant had not "changed his position for the worse." Along the same line, the bank now argues that the defendant did not change his position, that, although he talked to his credit union about borrowing money, he did not in fact borrow the $3,000 and further obligate himself, and that he suffered no detriment and was no worse off after the sale than before. True, defendant himself did not "change his position" by signing a promissory note, nevertheless his position changed. It was changed for him,[4] and because of the bank's repudiation of its agreement he lost whatever rights and opportunities his counsel's agreement with the bank had given him.

Specifically, how did his position change and what did he lose?

He had a right under § 400.9–506 to redeem the truck at any time before the bank sold it by

> tendering fulfillment of all obligations secured by the collateral as well as the expenses reasonably incurred by the secured party in retaking, holding and preparing the collateral for disposition, in

---

4. "[T]he element of estoppel is satisfied because their position was changed for them to their detriment and prejudice by the acts of appel-

lant." *United States Fidelity and Guaranty Co. v. Rice,* 241 Miss. 307, 130 So.2d 924, 927 (1961).

arranging for the sale, and to the extent provided in the agreement and not prohibited by law, his reasonable attorney fees and legal expenses.

Thus, defendant had a right to walk into the bank at any time before the sale and plunk his money down on the counter and demand the return of the truck. At that time the bank could not properly have demanded more than the $3,671.52 it demanded in its original petition, plus its attorney's fee. (The attorney's fee requested in the original petition was $500.)

In this regard, we note that, while the bank was securing bids from third parties on the truck and before the April 29 sale, Mr. May had offered the bank $3,000 for the truck and a complete release of any deficiency. The bank, nevertheless, accepted the highest bid it obtained, $1,375 and pocketed the $1,596.18 paid it under a collision insurance policy. Thus, if the bank had accepted defendant's $2,500 offer, the deficiency would have been only $115.01, and if it had accepted the $3,000 offer it would have received $384.99 more than it was entitled to under its contract, excluding the $180 attorney fee the court allowed and the court costs.

Instead, of course, defendant ended up owing a substantial deficiency, $1,420.01, and did not have the pickup truck he wanted, which, presumably, he and his credit union valued at $3,000 or more. That is detriment enough to satisfy the requirements of the doctrine of equitable estoppel. The court erred as a matter of law in holding that defendant suffered no detriment and that the bank was not estopped to assert its claim for the deficiency.

In such circumstances, the bank had no right to sell the truck until it advised defendant's counsel that the negotiations were at an end, that it no longer would withhold the sale. No more notice than that was required to lift plaintiff's voluntary suspension of its right to sell. The bank's present contention that it reasonably notified defendant of the sale by its March 1 notice begs the question. Since its attorney had agreed to suspend its right to sell for the time being and then, without warning and while defendant had reason to believe that negotiations were still pending, the bank sold the collateral in violation of that agreement, it ought not to be allowed to recover the deficiency.

Had the bank abided by its agreement, perhaps no deficiency would have resulted. It offered no evidence to show that a deficiency was inevitable. In fact, the evidence shows that the bank sold the collateral for $1,375.00, considerably less than defendant had offered in settlement. To charge that loss to defendant in these circumstances would be unconscionable.

The bank's claim appears even more unconscionable when one examines another of its facets. It does not dispute that its attorney and defendant's attorney agreed that the collateral would not be disposed of while negotiations continued. The bank neither contends nor did it present evidence that its attorney was not authorized to negotiate a settlement. It does not claim that it was not informed of the $3,000 offer or that it gave defendant any further notice of sale. The bank's attorney's letter shows that the bank sold the collateral without informing him that it was rejecting the offer. In doing so, the bank violated its counsel's agreement.

An attorney should not mislead or deceive another attorney in the course of negotiations, *In re Wines*, 370 S.W.2d 328, 334 (Mo.1963) (en banc), nor should an attorney permit his client to do so. Although the bank's attorney here appears not to have consciously committed any wrong, legitimate agreements between attorneys are sacrosanct and should be observed without quibble, cavil or evasion. *Marmara v. Rawle*, 264 Pa.Super. 229, 399 A.2d 750, 753 (1979); *In re Pittsburgh Rys. Co.*, 121 F.Supp. 948, 949 (W.D.Pa.1954). Denying the bank a deficiency judgment in this case is the only means of enforcing the agreement of its authorized representative.

For the foregoing reasons, and without addressing defendant's additional points, we reverse the judgment and remand the

case to the circuit court for entry of judgment in favor of defendant Billy J. May.

BERREY, J., concurs.

LOWENSTEIN, J., dissents by way of separate opinion.

LOWENSTEIN, Judge, dissenting.

I respectfully dissent. Three particular hurdles must be overcome for the matter to be reversed on appeal.

## SCOPE OF REVIEW AND THE FACTS

The majority says "ordinarily in a court tried case the appellate court is bound by the findings of fact." 696 S.W.2d at 519. The majority relies upon *Schroeder v. Horack*, 592 S.W.2d 742, 744 (Mo. banc 1979), as authority to dispense with treating the facts on review as those supportive of the judgment in the trial court. *Schroeder* was submitted at trial on stipulated facts. As such, that case allows for appellate review of the legal conclusions from those facts and is inapplicable here.

Review of this case has to be under *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976), and Rule 73.01 which give due regard to the trial court's opportunity to determine credibility. When review is on the basis of substantial evidence supporting the judgment, all evidence and inferences favorable to the prevailing party must be accepted as true and evidence to the contrary must be disregarded. *State ex rel. Miller v. McLeod*, 605 S.W.2d 160, 162 (Mo.App.1980). Where no findings or conclusions were requested, all fact issues are to be considered in accordance with the court's result. *Watkins v. Johnson*, 606 S.W.2d 493, 495 (Mo.App. 1980). The trial judge had leave to believe none, part or all of the testimony of the witnesses. *Husky Industries, Inc., v. Craig Industries*, 618 S.W.2d 458, 460 (Mo.App.1981).

Viewed in the light most favorable to the court's judgment for Southgate, the facts are as follows: Southgate's only witness was its bank officer, John Clements, who dealt with this particular loan and repossession. Clements testified that the bank sent its notice by certified mail of a private sale on March 1, and that around March 18 or 19 (within the 20 day redemption period) he received an offer from May for a waiver of the bank's rights to any deficiency balance and $2,500.00. This offer was rejected. Clements did not know of any further settlement offer communicated either by May or the bank's attorney. Contrary evidence presented by May under the applicable standard of review can be disregarded. This court should also not be at liberty to consider facts contained in the unsuccessful request for summary judgment made by May.

## DOES THE LAW ALLOW THE DEFICIENCY JUDGMENT TO BE SET ASIDE

The majority first asserts the bank did not give reasonable notice of its intent to sell the truck and is therefore precluded from receiving a deficiency judgment. The facts are that on March 1, the day of repossession, the bank sent a certified letter to the defendant telling him that he could redeem within 20 days for the stated debt and costs, or the truck would be sold at private sale. The law requires "reasonable notification of the time after which any private sale ... is to be made shall be sent by the secured party to the debtor." Section 400.9–504(3). UCC Comment 5 to this section states: "[E]xcept for the requirement of notification there is no statutory period during which the collateral must be held for disposition." Reasonable notification is not defined in this article of the code but is to be a sufficient time for the debtor to take appropriate steps to protect his interest. *Id.*

It should be noted May acknowledged the notice and made no contention the notice was not given or the time for sale was too short.

Section 400.9–506 states at any time before disposal of the collateral the debtor may redeem by "tendering fulfillment" of all obligations. The Comment says

"tendering fulfillment" means more than a new promise to perform on an existing promise—it requires payment in full.

In this case May had not tendered fulfillment prior to the sale of the truck.

Section 400.9–507(1) provides if the disposition of the property was not disclosed without notification the debtor may recover damages for a commercially unreasonable dispostion.

In this case a private sale, as contemplated by the loan documents, was held on April 29th. Although much is made of the sale price being less than May had offered, there never has been a direct attack on the sale price by May. May has neither attacked the sale as being commercially unreasonable nor brought an action for damages for lack of reasonable notice.

Section 400.9–507(2) states the fact a better price could have been obtained does not mean the sale was not conducted in a commercially unreasonable manner.

Since May brought no action under § 9–507(1), there is a question as to whether the denial of a deficiency judgment is an available remedy under the code adopted in this state. "The Code itself does not mention the denial of a deficiency as a remedy, not has any Missouri case so held. Section 9–507 provides that 'if the disposition has occurred, the debtor ... has a right to recover from the secured party any loss caused by a failure to comply with the provisions of this part.'" *Wirth v. Heavey*, 508 S.W.2d 263, 268 (Mo.App. 1974); *Jefferson Bank & Trust Company v. Horst*, 599 S.W.2d 201, 204 (Mo.App.1980). Contra *Executive Financial Services, Inc. v. Garrison*, 722 F.2d 417 (8th Cir.1983) (where the court felt Missouri law could require written as opposed to oral notice to be given to the debtor as a prerequisite to the creditor gaining a deficiency judgment). At best, it is most dubious whether the approach taken by May and adopted by the majority is a viable remedy. On the basis of *Wirth, supra,* it appears highly doubtful the reasonable notice requirement of the sale could be used as was done here to set aside a deficiency. *Wirth* suggests rather than denying a deficiency, the better practice where there has been creditor misbehavior would be for the court to examine the evidence as to the amount of the sale, giving a presumption first of the collateral being worth the debt. *Id.* at 268–69.

## THE QUESTION OF LAW

Even assuming for the sake of argument appellate consideration is available on all the facts as contained in the majority, and assuming the defense advocated by May is proper, the ultimate matter to be reviewed is whether the trial judge's conclusion adverse to a finding of estoppel was proper.

Before reaching the estoppel issue, the conclusion of the majority that the parties had agreed to the postponement of the sale should be addressed. This conclusion sounds of a binding contract having resulted and of a right of May to seek judicial relief for its breach. No such action or theory has ever been present in this case.

The element of the detriment or injury, which the trial court found wanting, even under facts favorable to May cannot be satisfied. The majority concedes May did not change his position by becoming obligated to pay for the truck. That he did not have the opportunity to offer more money or somehow outbid someone at a private sale simply does not satisfy the element of injury necessary to estoppel and does not allow the trial court's decision to be overturned.

There is just nothing in the UCC to allow a result which the majority reaches. This case involves only a matter of legal ethics and fair dealings between members of the bar. It is here on the issues of proper notice under the UCC and estoppel. Despite the unfairness of the result, the points on this appeal are lacking.