CENTURY STATE BANK,
Plaintiff/Respondent

v.

David W. BEAR, III,
Defendant/Respondent

and

William J. Bratrud and Clarice Bratrud,
Defendants/Appellants.

No. WD 40613.

Missouri Court of Appeals,
Western District.

May 23, 1989.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 27, 1989.

Application to Transfer Denied
Aug. 1, 1989.

Jean E. Goldstein, Columbia, for defendants/appellants, Bratrud.

Robert J. Dierkes, Columbia, for plaintiff/respondent, Century State Bank.

Bruce H. Beckett, Columbia, for defendant/respondent, Bear.

Before KENNEDY, C.J., and NUGENT and LOWENSTEIN, JJ.

KENNEDY, Chief Judge.

William J. Bratrud and Clarice Bratrud have appealed from two judgments in a court-tried case in favor respectively of Century State Bank and David V. Bear, III. The first judgment is in favor of the Bank for the unpaid balance of a promissory note of Bear to the Bank, which the Bratruds are alleged to have guaranteed by the terms of a lease between themselves as lessors and Bear as lessee.

The Bratruds owned a piece of property in Columbia, Missouri, on which was located an old house known as the "Proctor House". The Bratruds were developing the site as a commercial development. It was agreed by the Bratruds and Bear that Bear should remodel and use the Proctor House as a restaurant. Bear while the lease terms were being negotiated but before any lease was signed moved into the second floor of the house and commenced the renovation project.

As the lease was being prepared and as the renovation was under way, Bear was attempting to arrange financing from Century State Bank. After the execution of the lease, Bear negotiated a loan from the Bank for $36,000 and executed a note therefor. This lawsuit upon the note was brought by Century State Bank against Bear as maker of the note and against the Bratruds as guarantors thereof. The Bank's claim that the Bratruds guaranteed the note is based upon the following article in the lease between the Bratruds and Bear:

### ARTICLE 19

Lessors agree that all rights under this Lease may be assigned, by the Lessee, to the Century State Bank, a Missouri Banking Corporation, as partial or total collateral in obtaining a loan in the amount of Thirty–Six Thousand Dollars ($36,000.00) and that the Century State Bank shall have the right to assume the place of the Lessee under the terms of this Lease or to terminate this Lease, in the event the Lessee should become in default on any loan payments due Century State Bank for which this loan (sic) is collateral. In the event this Lease should be terminated by the Lessors or the Century State Bank the entire balance of the loan obtained by the Lessee shall become immediately due and payable, together with all interest accumulated and penalties or costs of collection, including but not limited to reasonable attorney's fees and court costs, if any; and in the event the Lessee fails to pay the same the Lessors agree to [pay]¹ the same to the Century State Bank within ten (10) days after written notice, to the Lessors, by the Century State Bank. The Lessors shall have the right to deduct any sums paid, by the Lessors, to the Century State Bank, from any sums due and owing the Lessee under the terms of this Lease.

The lease bore the date of January 20, 1984, but it was actually signed by the parties on March 7. On March 13, 1984, Bear executed the promissory note to Century State Bank for $36,000 and assigned the Bratrud lease to the Bank as security therefor. The proceeds of the loan were paid to Bear by the Bank.

From the loan proceeds Bear paid to the Bratruds $4,000 which they had advanced to him for paying a preexisting $4,000 note owing by Bear to Century State Bank of which note the Bank was requiring payment as a condition to making the $36,000 loan. Bear used $3,100 of the loan proceeds to pay a debt to a law book publisher, although later, according to his testimony, this was replaced by $3,500 received by him from the sale of an antique automobile. Another $20,000 of the loan's proceeds Bear entrusted to the Bratruds to be dis-

---

1. The word "pay" was omitted from the lease, but the court reformed the lease to insert it.

There is no complaint about the court's action in this matter.

bursed in the payment of the renovation expenses. The terms of the arrangement about the $20,000 are somewhat nebulous and in some particulars disputed. The rest of the proceeds are not accounted for.

On March 19, six days after the consummation of the loan, Bear entered the hospital for a 30–day program of alcoholic treatment.

After Bear's April 19 release from the hospital, he requested the return to him of the $20,000 which he had entrusted to the Bratruds. The Bratruds declined to surrender it to him. Bear did not have the funds to make the first monthly payment of $1,228.54 to Century State Bank, due April 27, 1984, on the $36,000 note.

On May 10, the Bratruds delivered to Bear a "notice of default". The notice, in accordance with Article 12 of the lease, to which we will return later, gave Bear ten days in which to cure certain defaults listed in the letter. On May 14—four days after the Bratruds' notice of default to Bear— the Century State Bank, assignee of the lease, terminated the lease under the terms of Article 19 thereof. Article 19, quoted above in full, gave to Century State Bank the right to terminate the lease in the event the lessee should become in default on any loan payments due Century State Bank for which the lease was collateral. The parties do not dispute that Bear's note to the bank was in default when the Bank terminated the lease, and do not dispute that Century State Bank for that reason had a right to terminate the lease. On June 15, 1984, the Bratruds paid to the Bank the $20,000 entrusted to them by Bear from the proceeds of the $36,000 loan. Century State Bank's lawsuit against Bear and the Bratruds followed.

The trial court gave judgment in favor of Century State Bank against Bear and against the Bratruds for the unpaid balance of the $36,000 promissory note, which (including interest to date, and giving credit for the $20,000 which the Bratruds had returned to Century State Bank) was $17,-291.56, plus $5,068.90 in attorney's fees provided by the note. Bear has not appealed the judgment against him.

The Bratruds appeal from this judgment in favor of Century State Bank. They claim that the court erred in finding that the lease, upon which Century State Bank bases its guaranty claim, was the agreement of the parties. Their theory is that Bear in preparing the final version of the lease substituted without their knowledge the page which included the language by which they guaranteed the $36,000 note to the bank. This language had been absent from the two versions of the lease which had been prepared by attorney Butcher, the Bratruds' lawyer. Bear denied that he had substituted the page, and claimed that Article 19 reflected the agreement of the parties. There are direct evidence and inferences on both sides of the issue. We are not inclined to disturb the trial court's finding, which rejected Bratruds claim that Bear had surreptitiously substituted the page and found that the signed lease was the agreement of the parties.

The Bratruds say that the usual *Murphy v. Carron* [2] standard of review in court-tried cases is not applicable here, because the trial judge who rendered the judgment had not heard all the testimony of the witnesses, but based his decision partially upon oral testimony which he had not himself heard but which had been heard by a judge who had recused himself after hearing a considerable part of the evidence. Judge Frank Conley of the Boone County Circuit Court had heard two days evidence (315 pages of transcript), then had recused himself. The Supreme Court appointed Judge Kenton Askren to the case. The Bratruds say we should give a de novo review and make our own fact findings.

The parties in a detailed stipulation agreed to allow Judge Askren to read the transcribed testimony heard by Judge Conley and to treat it as if heard by himself. The stipulation further provided that "any party shall be free to recall any witness for further testimony on direct, cross or rebuttal examination".

2.   536 S.W.2d 30 (Mo. banc 1976).

Judge Askren heard oral testimony of the Bratruds and of Bear. Any of these three witnesses could have been questioned, either on direct or cross-examination, about the circumstances leading up to and surrounding the execution of the lease. The case does not come within those cases which are cited by the Bratruds, where the trial court had before it only documentary evidence and oral testimony by deposition, in which we have said that there was no reason for us to apply our usual rule of deference to the trial court on questions of credibility of witnesses. *In re Estate of Wintermann*, 492 S.W.2d 763, 767 (Mo. 1973); *Southgate Bank and Trust Co. v. May*, 696 S.W.2d 515, 519 (Mo.App.1985); *Kenilworth Insurance Co. v. Cole*, 587 S.W.2d 93, 97–8 (Mo.App.1979). While we doubt that de novo review by the court would lead to a different result than that reached by the trial court, we decline to depart from our customary standard of review in court-tried cases. Rule 73.01; *Murphy v. Carron*, 536 S.W.2d at 32.

We therefore affirm the trial court's judgment in favor of Century State Bank against the Bratruds.

■ The second judgment appealed by the Bratruds is a $16,000 judgment for Bear against the Bratruds on Count I of Bear's cross-claim against them. Appellants Bratrud complain of the court's finding (the crucial finding, upon which the judgment was based) that they had terminated the lease under the terms of Article 18. Article 18 reads as follows:

### ARTICLE 18

*Termination by Lessor*

Lessors shall have the right to terminate this Lease at any time during the period of this Lease by giving Lessee notice in writing of such termination, and Lessee agrees to vacate the leased premises within ninety (90) days after the first rent day following such notice. Lessors agree that in order to make such termination effective during the first three (3) years of this term, Lessors shall pay to Lessee a cash payment in the sum of Thirty Six Thousand Dollars ($36,000.00). If such termination occurs during the fourth year of this term, the required cash payment shall be Fifteen Thousand Dollars ($15,000.00), and if such termination occurs during the fifth year of this term, and prior to the end of the term, the required cash payment to Lessee shall be Ten Thousand Dollars ($10,-000.00).

This article, it will be noted, gave the Bratruds the power to terminate the lease without cause at any time during the lease by the payment of a certain sum to the lessee. If the termination was made within the first three years, the payment would be the $36,000. Based upon a finding that the Bratruds' May 10, 1984, "notice of default" constituted a termination under Article 18, the court awarded to Bear a judgment against the Bratruds for $36,000 (less the $20,000 which the Bratruds had paid to the Bank, for a net amount of $16,000). The Bratruds' May 10 "notice of default", however, clearly was based upon Article 12 of the lease, which provided that the lessors should have the "right and privilege" of terminating the lease upon 10 days' notice and opportunity to correct in case of lessee's default or breach of the lease. Had the lease later been terminated pursuant to the Article 12 "notice of default", for lessee's default, Article 12 would have required no payment of any sum by the Bratruds. The Bratruds' May 10 "notice of default" did not purport to terminate the lease. It was not based upon Article 18, which gave the lessor the absolute right to terminate upon payment of the amount provided in that article. The termination of the lease was effected by Century State Bank on May 14 under the power given it by Article 19, copied *supra*.

The respondent attempts to make an Article 18 termination out of the Bratruds' Article 12 "notice of default" by stirring into the mix Century State Bank's termination of the lease on account of Bear's default in paying the promissory note to the bank. This default, Bear argues, was caused by the Bratruds' withholding from Bear the $20,000 which Bear had entrusted to them. From that, Bear makes the long

leap to the conclusion that Century State Bank's termination of the lease was tantamount to a voluntary Article 18 termination of the lease by the Bratruds, which in turn obligated the Bratruds to pay $36,000 to Bear. Bear cites us to no cases which tend to support such an idea, nor does he develop a rationale therefor. It is without support in the evidence.

The judgment against the Bratruds on Count 1 of Bear's cross-claim is reversed.

On other counts in Bear's and the Bratruds' mutual cross-claims, the court gave judgments to Bear against Bratrud for $700 and $4,127.95; gave judgment to the Bratruds against Bear for $2,700.00 and granted and denied respectively other incidental claims for relief. None of these are before us on this appeal.

All concur.